UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANET RAMALLO,

     Plaintiff,

v.                         Case No.:  2:19-cv-764-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Janet Ramallo filed a Complaint on October 22, 2019.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for a period of disability and

disability insurance benefits.  (Doc. 29 at 1-2).  The Commissioner filed the transcript

of the administrative proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number), and the parties filed a joint memorandum detailing their

respective positions.  (Doc. 29).  For the reasons set forth herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42

U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed a claim for a period of disability and disability insurance benefits on June 2, 2017.  (Tr. at 15).[1]  Plaintiff asserted a disability onset date of January 27, 2009.  (*Id.*).  Plaintiff's claim was denied at the initial level.  (*Id.*).  Plaintiff requested an administrative hearing, held on September 6, 2018, before Administrative Law Judge ("ALJ") Ryan Johannes.  (*Id.* at 33).  The ALJ issued an unfavorable decision on December 17, 2018.  (*Id.* at 12).  On June 13, 2019, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1).  Plaintiff then filed her Complaint with this Court on October 22, 2019, and the parties consented to proceed before a United States Magistrate Judge for all purposes.  (Docs. 1, 15, 18).  The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  (Tr. at 17).  At step one of the sequential evaluation, the ALJ found that, while Plaintiff alleges a disability onset date of January 27, 2009, she engaged in substantial gainful activity from January 27, 2009 to June 30, 2009, and from July 1, 2011 to December 31, 2012.  (*Id.* at 15, 17). The ALJ also found that Plaintiff was not engaged in substantial gainful activity for two periods of time while she was still insured:  July 1, 2009 to June 30, 2011; and January 1, 2013 to December 31, 2016.  (*Id.* at 18).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  "fibromyalgia; mild cervical degenerative disc disease and spondylosis; left sacroiliac joint arthropathy; lower

back pain; and right knee chondromalacia diagnosed in 2017 (20 CFR §

404.1520(c))." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20

C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.*).

At step four, the ALJ found:

> After careful consideration of the entire record, the
> undersigned finds that, through the date last insured, the
> claimant had the residual functional capacity to perform
> light work as defined in 20 [C.F.R. §] 404.1567(b) except
> she can occasionally climb stairs and ramps, but never climb
> ladders and scaffolds. She can occasionally balance and
> stoop crouch. The claimant can never kneel with her right
> lower extremity. She can occasionally reach above head.
> She should avoid concentrated exposure to extreme cold
> and heat and vibrations, and all exposure to moving
> mechanical parts and unprotected heights.

(*Id.* at 20). Additionally, based on the Vocational Expert's ("VE") testimony, the

ALJ determined that Plaintiff "was capable of performing [her] past relevant work as

a clinical counselor" stating that "[t]his work did not require the performance of

work-related activities precluded by [Plaintiff's] residual functional capacity (20

[C.F.R. §] 404.1565)." (*Id.* at 25). The position of a clinical counselor (DOT

045.107-050) is sedentary in exertion and skilled with an SVP of 7. (*Id.*).

Because the ALJ found that Plaintiff could perform her past relevant work

through her date last insured, he did not make any findings for the fifth step of the

sequential evaluation process. Thus, the ALJ concluded that Plaintiff was not under

a disability from January 27, 2009, the alleged onset date, through December 31, 2016, the date last insured. (*Id.*).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to

determine reasonableness of factual findings).

**V.    Analysis**

On appeal, Plaintiff raises four issues.  As stated by the parties, the issues are:

1.    Whether the ALJ properly weighed [the] treating providers' opinions;

2.    Whether the ALJ erred in failing to conduct the special psychiatric review technique . . . to assess Plaintiff's memory and concentration difficulties;

3.    Whether the ALJ failed to properly develop the record; and

4.    Whether the ALJ properly assessed the impact of Plaintiff's fibromyalgia.

(Doc. 29 at 17, 31, 37, 40).  The Court separately addresses each issue below.

**A.    The ALJ Properly Assessed the Medical Evidence of Record.**

Plaintiff first argues that the ALJ did not properly weigh the opinions of

Plaintiff's treating providers.  (*Id.* at 17).  Specifically, Plaintiff takes issue with the

absence of ARNP Laura Holland and ANRP Souza's opinions from the ALJ's

decision.  (*Id.* (citing Tr. at 831, 922)).  Plaintiff argues that, under 20 C.F.R. §

404.1527, the ALJ further erred by failing to explain the precise weight that he gave

to each ARNP's opinion.  (*Id.* at 17-18).  As explained by Plaintiff, this requirement

allows subsequent reviewers of the ALJ's decision to follow the ALJ's reasoning and

determine whether his decision is supported by substantial evidence.  (*Id.* at 18).

While Plaintiff does correctly assert that this regulation only applies to disability

insurance benefits applications before March 27, 2017, she incorrectly asserts that she filed her application before March 27, 2017.  (*Id.* at 17).

In response, the Commissioner argues that Plaintiff's application was filed on June 2, 2017 – *i.e.*, after March 27, 2017 – so the new regulations apply to her case. (*Id.* at 24, 29).  In arguing that the new regulations apply, the Commissioner claims that the ALJ was not required to assign a specific weight to any of the medical opinions issued by Plaintiff's treating sources, including ARNP Holland and ARNP Souza.  (*Id.* at 24-29).

Additionally, the Commissioner asserts that, even though the ALJ is not required to assign weight to the ARNPs' opinions, any analysis of their opinions regarding Plaintiff's ability to work is irrelevant.  (*Id.* at 30).  In support, the Commissioner states that ARNP Holland issued her opinion authorizing Plaintiff to engage in part-time work on February 22, 2012, a date in the middle of a time period when the ALJ determined that Plaintiff was engaged in substantial gainful activity. (*Id.* at 30).  The Commissioner also argues that ARNP Souza's opinion was issued on April 4, 2018, fifteen months after Plaintiff's date last insured, making it irrelevant to determining whether Plaintiff was disabled prior to December 31, 2016.  (*Id.*).

In March 2017, the SSA implemented new regulations regarding the evaluation of medical evidence for claims, like Plaintiff's, filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under these new regulations, the Commissioner "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).

Under the new regulations, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 404.1520c(b)(1).  "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness."  *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted).  Furthermore, "nothing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions."  *Hand v. Comm'r of Soc. Sec.*, 786 F. App'x 220, 225 (11th Cir. 2019).  Instead, the ALJ's RFC determination must merely be supported by substantial evidence.  42 U.S.C. § 405(g).

Importantly, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'"  *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).  Nevertheless, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation."  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008); *see also* SSR 96-6p.

8

Accordingly, the Court agrees with the Commissioner, as Plaintiff's application was filed on June 21, 2017 – *i.e.*, after March 27, 2017 – the new regulations apply to this matter. The Court finds that under the new regulations, the ALJ was not required to assign a specific weight to ARNP Holland and ARNP Souza's opinions. *See* 20 C.F.R. § 404.1520c(a). The ALJ's statement that he considered the entire medical record and his assignment of weight to the opinion of the State Agency review consultant was sufficient to satisfy his obligations for examining Plaintiff's medical sources. (*See* Tr. at 24-25); *see also Freyhagen*, 2019 WL 4686800, at *2. The Court finds Plaintiff's arguments on this issue unpersuasive as they are based regulations and case law that are not applicable to her case. (Doc. 29 at 17-22). As such, the Court finds that the ALJ did not err by failing to assign an exact weight or specifically discuss the opinions of ARNP Holland and ARNP Souza. *See* 20 C.F.R. § 404.1520c(a).

## B. The ALJ Did Not Err by Failing to Conduct the Special Psychiatric Review Technique.

Plaintiff's second argument is that the ALJ was required to complete a special psychiatric review technique form ("PRTF") to evaluate the severity of Plaintiff's alleged mental impairments: (1) depression; (2) memory loss; and (3) difficulty concentrating. (Doc. 29 at 31). Plaintiff identifies multiple locations in the record where her alleged depression is referenced. (*Id.* at 31-32 (citing Tr. at 65, 67-68, 80, 457, 593, 750)). Additionally, at the hearing before the ALJ, Plaintiff testified about her difficulty concentrating. (*Id.* (citing Tr. at 47-48, 52, 53)). Plaintiff argues that, in

light of these references to mental impairments, the ALJ was required to complete a PRTF and incorporate its mode of analysis into his decision.  (*Id.* at 33-34 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *Huddleston v. Astrue*, No. CA 07-0757-C, 2008 WL 2225697 (S.D. Ala. 2008); *Doss v. Astrue*, No. CA 07-0375-C, 2007 WL 4570551 (S.D. Ala. 2007)).

Plaintiff contends that the ALJ's failure to complete a PRTF to assess her memory loss and concentration difficulties was a harmful error given that Plaintiff's past relevant work as a clinical counselor carries an SVP level of 7 and requires application of logical and scientific thinking to define and solve complex problems. (*Id.* at 34 (citing Doc. 23-1 at 5-6)).  Plaintiff further claims that had her RFC been properly limited to detailed tasks instead of complex tasks, the VE would have found her unable to perform her past relevant work.  (*Id.* at 35).  Accordingly, Plaintiff alleges that the ALJ's decision was not supported by substantial evidence.  (*Id.*).

The Commissioner argues, however, that the ALJ properly evaluated the evidence of Plaintiff's mental impairments and correctly concluded that there was insufficient evidence to substantiate the presence of any mental disorders.  (*Id.*).  The Commissioner alleges that the ALJ specifically identified that, while depression was occasionally mentioned in the record, Plaintiff was never actually diagnosed with depression or any other mental impairments.  (*Id.* (citing Tr. at 18)).  Moreover, the Commissioner argues that Plaintiff's allegations regarding the existence of her memory loss and concentration difficulties are not sufficient to establish a medically determinable impairment, let alone a severe impairment, because there is no medical

evidence in the record supporting Plaintiff's claims.  (*Id.* at 36 (citing 20 C.F.R. §

404.1529(b) ("Your symptoms . . . will not be found to affect your ability to do basic

work activities unless medical signs or laboratory findings show that a medically

determinable [impairment] is present."))).

Mental impairments must be established by objective medical evidence from

an acceptable medical source.  20 C.F.R. § 404.1521.  When evaluating mental

impairments, the regulations require an ALJ to use the "special technique" dictated

by the PRTF.  *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R.

§ 404.1520a(a).  This technique requires that the ALJ assess Plaintiff's mental

impairments using the following four broad functional areas (known as the

Paragraph B criteria):  (1) understanding, remembering, or applying information; (2)

interacting with others; (3) concentrating, persisting, or maintaining pace; and (4)

adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  An ALJ is required to

incorporate the results of the PRTF into the findings and conclusions in his decision.

*Moore*, 405 F.3d 1208, 1213-14; 20 C.F.R. § 404.1520a(e)(4).  Moreover, remand is

required when two factors are present:  (1) a claimant has presented a "colorable

claim" of mental impairment; and (2) an ALJ has failed to apply the special

technique.  *See id.* at 1214.

> **1.     Whether the ALJ erred when he chose not to complete a PRTF to assess Plaintiff's memory loss and difficulty concentrating.**

The Court is not persuaded by Plaintiff's argument that she suffers from a

medically determinable impairment related to memory loss or concentration

difficulties.  As evidence of her memory loss and concentration difficulties, Plaintiff cites to her comments during the hearing before the ALJ and the notes created by state agency decision maker Simone Williams, who recorded Plaintiff's alleged impairments on June 16, 2017.  (Doc. 29 at 31-32 (citing Tr. at 47-48, 52-53, 65-66)).

The Court finds that unsubstantiated complaints made by a claimant roughly six months after the date last insured are unpersuasive for determining the existence of a mental impairment.  *See* 20 C.F.R. § 404.1521.  Rather, the ALJ was correct when he stated that "[t]here was no actual [diagnosis] of depression or any other mental health [diagnosis] rendered."  (Tr. at 18 (citing Tr. at 750)).  Indeed, upon reviewing the record, the Court finds that the only evidence of memory loss or difficulty concentrating is:  (1) a letter written by Plaintiff on June 14, 2017, in response to a Supplemental Pain Questionnaire (Tr. at 382); (2) Plaintiff's own statements during an initial call on June 16, 2017, with Simone Williams (*id.* at 65-66); and (3) Plaintiff's testimony during the hearing before the ALJ on September 6, 2018 (*id.* at 47-48, 52-53).  Moreover, the only mention of memory loss in Plaintiff's medical records occurred on July 29, 2009, roughly six months after the onset of Plaintiff's disability, when Dr. Jose Campoamor found that "Patient denies memory loss, depression, insomnia, anxiety, and nervousness."  (*Id.* at 210, 534, 635, 1102).

In light of the complete absence of evidence from acceptable medical sources in the record, the Court finds that the medical evidence of record does not establish Plaintiff's alleged mental impairment related to memory loss or difficulty concentrating.  Accordingly, the Commissioner did not err when he chose not to

complete a PRTF to assess memory loss or difficulty concentrating.  20 C.F.R. § 404.1521 ("[A] mental impairment must be established by objective medical evidence from an acceptable medical source."); *see also Williams v. Comm'r of Soc. Sec.*, No. 2:16-cv-234-FtM-MRM, 2017 WL 2115985, at *7-8 (M.D. Fla. May 16, 2017).

### 2.  Whether the ALJ erred when he chose not to complete a PRTF to assess Plaintiff's depression.

Next, to support her contention that the ALJ was required to complete a PRTF to assess the severity of her depression, Plaintiff cites to state agency consultant Byron Pack, Psy.D., who made conflicting findings while conducting a disability determination.  (Doc. 29 at 31 (citing Tr. at 80)).  His first finding stated that Plaintiff suffers from depressive, bipolar, and related disorders at a severity level of non-severe.  (Tr. at 80).  Bryon Pack's second finding, made while he completed a Psychiatric Review Technique, stated that "[t]here is insufficient evidence to substantiate the presence of [depressive, bipolar, and related disorders]."  (*Id.*).  He went on to acknowledge that there is no actual diagnosis of depression anywhere in the record and there is insufficient evidence to adjudicate Plaintiff's claim of depression.  (*Id.* at 81).

The Court finds that the ALJ correctly concluded that there was insufficient evidence in the record to support the presence of a medically determinable mental health impairment, including depression.  (*See id* at 18).  Accordingly, given the lack of evidence in the record, the Court finds that the record does not establish Plaintiff's alleged mental impairment related to depression.

In reaching this conclusion, the Court considered the relevant evidence of depression in the record, including:  (1) Dr. Hood's notation of a "history of depression" on May 18, 2015 (*id.* at 593); (2) Simone Williams' record of Plaintiff's statements, which indicate that Plaintiff took medication for depression in 2001 and is currently on Cymbalta (*id.* at 65); (3) several review of systems findings that note "depression" as present (*see id.* at 700, 728, 750, 853, 964); and (4) Plaintiff's statement during the hearing that she was previously diagnosed with depression but believes that it has been stabilized by her medication (*id.* at 45).  Notably absent from the record is a diagnosis of depression or analysis of the effects of Plaintiff's alleged depression.  Furthermore, there is no history of specialized mental health treatment during the relevant time period and no diagnostic findings of a mental impairment. While Byron Pack found that Plaintiff suffered from a non-severe medically determinable impairment of depression, he also found that there was insufficient evidence to substantiate the presence of the disorder where, as here, there is no diagnosis of depression in the record and insufficient analysis of the impairment.  (*Id.* at 80).  Additionally, Candace Mihm, Ph.D., the second state agency mental health review consultant, found that there was insufficient evidence in the record to analyze the presence of a depression disorder.  (*Id.* at 68).

At most, the evidence in the record supports the contention that Plaintiff historically suffered from depression and currently controls it with medication.  Such a finding and its associated evidence is insufficient to establish a "colorable claim" of mental impairment during the relevant time period.  *See Sesberry v. Astrue*, No. 3:08-

cv-989-J-TEM, 2010 WL 653890, at *3-5 (M.D. Fla. February 18, 2010) (finding that a plaintiff had not presented a colorable claim of mental impairment where his medical record included two notations of depression, a referral to a psychiatrist, and a prescription for an antidepressant); *Dixon v. Astrue*, No. 5:09-cv-320-RS-EMT, 2010 WL 4942141, at *8 (N.D. Fla. Oct. 26, 2010), *report and recommendation adopted*, No. 5:09-cv-320-RS-EMT, 2010 WL 4929045 (N.D. Fla. Nov. 30, 2010) (holding that a plaintiff failed to present a colorable claim of mental impairment even when the plaintiff's treating physician diagnosed anxiety and prescribed medication for the diagnosis).

Furthermore, the Court finds that, even if Plaintiff presented a colorable claim of mental impairment due to depression, the ALJ's error in failing to complete a PRTF was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (finding that the ALJ's decision will stand when an incorrect application of the regulations results in "harmless error," because the correct application would not contradict the ALJ's ultimate findings). Rather than allege that her depression affected her ability to do basic work activities, Plaintiff stated that her depression is "stable" and controlled by medication. (*See* Tr. at 45, 65). Plaintiff's allegations that her mental impairments affect her ability to work all relate to her memory and concentration, evidence of which is absent from the record.

Moreover, the Court finds that, had the ALJ applied the PRTF, Plaintiff's depression still would have been found to be non-severe. (*Id.* at 18). The ALJ already found Plaintiff's depression to be a non-severe impairment, noting that her

depression did not preclude her from participating in highly functional activities. (*Id.*).  He also noted, as the state agency mental health review consultants did, that the record is devoid of evidence to support the existence to support the presence of a severe mental health impairment.  (*Id.*).  Thus, had the ALJ applied the PRTF, Plaintiff's depression would have been found to be non-severe, which is consistent with the finding that the ALJ already made on the record.  (*Id.*).

Thus, the ALJ's failure to complete a PRTF in this case is harmless.  *See Diorio*, 721 F.2d at 728; *Dixon v. Astrue*, No. 5:09-cv-320-RS-EMT, 2010 WL 4942141, at *10 (N.D. Fla. Oct. 26, 2010), *report and recommendation adopted*, No. 5:09-cv-320-RS-EMT, 2010 WL 4929045 (N.D. Fla. Nov. 30, 2010) (finding that an ALJ's failure to apply the special technique was harmless where the plaintiff had been diagnosed with anxiety, but the ALJ would have characterized it as non-severe at step two); *see also Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 648, 655 (6th Cir. 2009) (harmless error found where the ALJ failed to make required findings regarding severity of a mental impairment, as the error did not deprive the plaintiff of a substantial procedural right; nor did it prejudice him on the merits because the record indicated that his bipolar disorder was not severe enough to render him disabled).  Accordingly, Plaintiff is not entitled to relief on this issue.

### C.    The ALJ Properly Developed the Record.

Plaintiff's third argument is that the ALJ failed to properly develop the record when he chose not to subpoena Plaintiff's medical records from Naples Urgent Care and Dr. John White.  (Doc. 29 at 37).  On August 14, 2018, Plaintiff requested that

the ALJ issue subpoenas for the outstanding medical records from Naples Urgent Care and Dr. John White.  (Tr. at 431).  Then, during the hearing, the ALJ and Plaintiff's counsel had the following exchange:

> ALJ:  Have you had an opportunity to review the record?
>
> Counsel:  I have.
>
> ALJ:  Do you have any new evidence that is related to the claimant's impairments?
>
> Counsel:  I don't, Judge.  The prior letter went in on the 14th of August, requesting a subpoena for a couple of sources that are giving us some difficulty.
>
> ALJ:  Would the record remain open?
>
> Counsel:  Yes, please.
>
> . . .
>
> Counsel:  Oh, how long are we holding the record on that, Judge?
>
> ALJ:  We'll start with two weeks.

(Tr. at 34, 59).  Despite Plaintiff's request that the ALJ issue a subpoena, the ALJ chose not to and issued his opinion on December 17, 2018, finding Plaintiff not disabled.  (*See* Tr. at 15-29).

Plaintiff argues that her subpoena request for records was sent to the ALJ twenty-three days before the hearing, well within the timeframe required by 20 C.F.R. § 404.332(b).  (*Id.* (citing Tr. at 431)).  As such, Plaintiff argues that the ALJ had a duty to issue those subpoenas pursuant to a "regulatory requirement" and his duty to develop the record.  (*Id.* at 38).  Plaintiff asserts that the ALJ's duty to

develop a full and fair record exists even when a plaintiff is represented by counsel. (*Id.* (citing *Sims v. Apfel*, 530 U.S. 103 (2000); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995))).  Specifically, Plaintiff relies on *Rease v. Barnhart*, 422 F. Supp. 2d 1334 (N.D. Ga. 2006), where the court held that the ALJ was responsible for making "every reasonable effort to develop the complaint's complete medical history for at least the twelve months preceding the month in which the claimant filed her application and, if applicable, for the twelve month period prior to the month in which he was last insured."  (*Id.* (citing *Rease*, 422 F. Supp. 2d at 1372 (citing 20 C.F.R. § 404.1512(d) (2006)))).

For his part, the Commissioner argues that 20 C.F.R. § 404.950(d)(1) states that an ALJ "may" issue a subpoena for evidence and, as such, the ALJ did not err by exercising his discretion to not subpoena Plaintiff's additional medical records. (Doc. 29 at 39).  Additionally, the Commissioner notes that the ALJ allowed the record to stay open for two weeks to allow Plaintiff to obtain any necessary medical records.  (*Id.* (citing Tr. at 34)).  Finally, the Commissioner asserts that Plaintiff failed to show how she was prejudiced by the ALJ's failure to subpoena records from Naples Urgent Care and Dr. John White.  (*Id.* at 40).  Because the record contains "sufficient evidence" for the ALJ to make an "informed decision," the Commissioner contends that Plaintiff was not prejudiced and the ALJ's findings are supported by substantial evidence.  (*Id.* (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Graham*, 129 F.3d at 1423)).

Even though Social Security proceedings are inquisitorial rather than adversarial in nature, claimants have the burden of establishing their eligibility for benefits. *Ingram*, 496 F.3d at 1269; 20 C.F.R. §§ 404.1512(a), 416.912(a). During the administrative process, therefore, a claimant must inform the SSA about or submit all evidence known to the claimant relating to whether the claimant is disabled. 20 C.F.R. §§ 404.1512(c), 416.912(c). While the claimant must provide medical evidence proving she is disabled, the ALJ has a basic obligation to develop a full and fair record, an obligation that attaches even when the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

When the plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted. *Id.* at 935; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." (Citation omitted)).

If the evidence is consistent but the Commissioner does not have sufficient evidence to determine whether a claimant is disabled, or, if after weighing the evidence, the Commissioner determines that a conclusion cannot be reached about

whether the claimant is disabled, the Commissioner will determine the best way to resolve the inconsistency or insufficiency, including re-contacting a treating physician or medical source or asking the claimant to undergo a consultative examination.  20 C.F.R. §§ 404.1520b(c)(1), (3), 416.920b(c)(1), (3).  Alternatively, an ALJ may issue subpoenas for the production of records at the request of a party when it is "reasonably necessary for the full presentation of the case."  20 C.F.R. § 404.950(d)(2).  The party's written request for a subpoena must "state the important facts that the . . . document is expected to prove and indicate why these facts could not be proven without issuing a subpoena."  *Id.*

To begin, the Court finds that Plaintiff's August 14, 2018 subpoena request did not "state the important facts that the [documents were] expected to prove [or] indicate why these facts could not be proven without issuing a subpoena."  20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2).  In failing to do so, Plaintiff did not provide the ALJ with a sufficient justification to subpoena the requested documents.  Accordingly, the decision on whether to issue the subpoenas was within the ALJ's discretion.  *See* 20 C.F.R. § 404.950(d)(1).

Moreover, Plaintiff neglected to provide any argument, whether in her subpoena request to the ALJ or in her brief to this Court, as to how the ALJ's failure to consider records from Naples Urgent Care and Dr. John White resulted in an evidentiary gap or prejudice to her.  *See Henry*, 802 F.3d at 1267 ("Remand for further factual development of the record before the ALJ is appropriate where the

20

record reveals evidentiary gaps which result in unfairness or clear prejudice."
(Quotation and citation omitted)).

Given that Plaintiff failed to establish what, if any, specific evidence from
Naples Urgent Care or Dr. John White exists and shows that she is disabled, she
failed to meet her burden of establishing an evidentiary gap or prejudice. Merely
speculating that additional development of the record will support Plaintiff does not
satisfy Plaintiff's burden and, therefore, remand is not warranted on this issue. *See
Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014); *Palencia v. Saul*,
No. 8:19-cv-1062-T-AEP, 2020 WL 5742981, at *4 (M.D. Fla. Sept. 25, 2020).

Furthermore, Plaintiff fails to allege the specific impairments that the Naples
Urgent Care and Dr. John White records would support. As such, Plaintiff has not
shown the existence of an evidentiary gap and she failed to meet her burden to show
that she was prejudiced by the ALJ's decision not to issue a subpoena. *See Mosley v.
Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (quoting
*Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Finally, the Court finds that Plaintiff's reliance on *Rease* is misplaced because
the *Rease* court found that the records the plaintiff asked the ALJ to subpoena were
necessary to the plaintiff's case. *Rease*, 422 F. Supp. 2d at 1372. Here, Plaintiff made
no such showing of "necessity" and, furthermore, she failed to make any persuasive
argument that the ALJ's omission of the records of Naples Urgent Care and Dr.
John White prejudiced her case. (*See* Doc. 29 at 37-39; *see also* Tr. at 431-432). Thus,
the Court finds that remand is unwarranted.

**D.     The ALJ Properly Assessed the Impact of Plaintiff's Fibromyalgia.**

Lastly, Plaintiff argues that the ALJ failed to properly assess the effects of Plaintiff's fibromyalgia when he did not assess the factors listed in Social Security Ruling ("SSR") 12-2p, which states in relevant part:

> Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work.  If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2p (S.S.A. July 25, 2012).  Specifically, Plaintiff argues that, in lieu of assessing Plaintiff's daily activities, Plaintiff's medications, the nature and frequency of Plaintiff's attempts to obtain medical treatment for symptoms, and any statements by other people about Plaintiff's symptoms, the ALJ engaged in "'sit-and-squirm' jurisprudence, noting that Plaintiff 'sat through the hearing without apparent distress.'"  (Doc. 29 at 42 (citing Tr. at 24)).

Plaintiff argues that if the ALJ properly limited her to a range of sedentary work and found her unable to perform her past relevant work, she would have been found disabled based on the Medical-Vocational Guidelines.  Plaintiff cites to Eleventh Circuit precedent for the propositions that:  (1) an ALJ cannot rely on a

"lack of objective findings standing alone" to justify discounting a plaintiff's alleged symptoms from fibromyalgia, (*id.* at 43 (citing *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010))); and (2) an ALJ cannot rely on an absence of records and conservative treatment to disregard a plaintiff's described symptoms of fibromyalgia, (*id.* (citing *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 906 (11th Cir. 2016))).  In reliance on Eleventh Circuit case law, Plaintiff argues that the ALJ did not adequately explain why he failed to credit Plaintiff's testimony as to her pain and, as a result, he failed to include appropriate limitations in her RFC.  (*Id.* at 44).

In response, the Commissioner asserts that the ALJ included fibromyalgia as one of Plaintiff's severe impairments at step two (*id.* (citing Tr. at 18)), and a diagnosis of fibromyalgia alone does not support the argument that the ALJ should have imposed more restrictive limitations on Plaintiff's RFC, (*id.* (citing Tr. at 18-25; *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005))).  The Commissioner also argues that Plaintiff failed to show that her fibromyalgia supports greater limitations than those found by the ALJ.  (*Id.* at 45 (citing 20 C.F.R. §§ 404.1505(a), 404.1509; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002))).  To support the ALJ's findings, the Commissioner points to the medical records that show an improvement in Plaintiff's symptoms due to medication, (*id.* (citing Tr. at 229, 556, 591, 611, 843)), and Plaintiff's own statements that she drives and engages in light exercise, (*id.* (citing Tr. at 585, 626, 688, 749, 753; 20 C.F.R. § 404.1529(c); SSR 16-3p, 81 Fed.

Reg. 14,166 (Mar. 16, 2016); *Wilson*, 284 F.3d at 1225-26)).  The Commissioner asserts that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements and, in turn, the ALJ's assessment of Plaintiff's RFC.  (*Id.* at 46).

### 1.  Whether the ALJ properly assessed the effects of fibromyalgia while determining Plaintiff's RFC.

The Court acknowledges that fibromyalgia has been treated differently than other diseases by the Eleventh Circuit.  Fibromyalgia is a unique disease and "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The Court also acknowledges that credibility determinations are the province of the ALJ.  *Id.* at 1212 (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

In this case, the ALJ considered the entire record, not just the objective medical evidence when evaluating Plaintiff's subjective statements.  (Tr. at 20-23).  The ALJ considered Plaintiff's subjective statements, reviewed the medical evidence of record, and considered Plaintiff's daily activities to determine that Plaintiff's RFC allowed her to perform light work.  (*Id.* at 19-23).  The Court finds that the ALJ did not err in his consideration of Plaintiff's subjective statements and his determination that Plaintiff could perform light work during the relevant time period is supported by substantial evidence.

Plaintiff's argument that the ALJ failed to comply with SSR 12-2p is unpersuasive.  To begin, the ALJ specifically stated that he considered the ruling

when he determined that Plaintiff's fibromyalgia was not only a medically determinable impairment, but also a severe impairment.  (*Id.* at 18-19).  Additionally, during the ALJ's determination of Plaintiff's RFC, he noted that she was diagnosed with fibromyalgia in 2009, that it was treated with medications, that she does not use assistive devices, that she helps with some household chores, that she grocery shops, and that she uses the computer for over three hours a day.  (*Id.* at 20).  The ALJ also notes that Plaintiff was seen for fibromyalgia on April 28, 2010, had labs taken on November 20, 2009, and failed to have repeat labs taken as recommended.  (*Id.* at 21 (citing Tr. at 605-606)).  He took note of records on February 22, 2012, that indicate Plaintiff presented for a check up on her fibromyalgia.  (*Id.* at 22 (citing Tr. at 983)).  Additionally, the ALJ noted Plaintiff's fibromyalgia follow up on March 10, 2016, which describes the medications taken by Plaintiff and indicates that Plaintiff engages in "light exercises" and "drives."  (*Id.* (citing Tr. at 761-763)).  The evidence of record cited by the ALJ clearly supports his RFC determination.

Moreover, the Court finds Plaintiff's reliance on *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) and *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 906 (11th Cir. 2016) unpersuasive.  Unlike the situation in *Somogy*, where the ALJ rejected a treating physician's opinions based on a lack of objective findings, the ALJ here considered Plaintiff's treatment history, the reported effectiveness of her medications, and her functional activity levels during the relevant time period.  (Tr. at 19-24 (citing Tr. at 605-606, 761-763, 983)).  Similarly, *Brown-Gaudet-Evans* is inapplicable because the ALJ here did not exclusively rely on an

absence of records and evidence of conservative treatment, but on multiple different factors to determine that Plaintiff could perform light work. (*Id.*). Moreover, the ALJ here noted the inconsistencies between Plaintiff's claims of disability and Plaintiff's diverse functional abilities. (*Id.* at 24). Specifically, the ALJ noted Plaintiff could perform light work considering her ability to drive, grocery shop, use the computer for approximately three hours a day, and work on completing a course to earn her real estate license. (*Id.*).

Accordingly, the Court finds that the ALJ complied with SSR 12-2p and his RFC determination is supported by substantial evidence of record.

### 2.  Whether the ALJ improperly applied "sit and squirm" jurisprudence.

The concept of "sit and squirm" jurisprudence denotes that an ALJ's denial of a claim is based on the claimant's failure to exhibit certain traits that the ALJ has subjectively determined would exist if the claimant were truly disabled. *Wood v. Berryhill*, No. 4:15-cv-1248-LSC, 2017 WL 1196951, at *12 (N.D. Ala. Mar. 31, 2017) (citing *Freeman v. Schweiker*, 681 F.2d 727, at 731 (11th Cir. 1982)). Even though "sit and squirm" jurisprudence is prohibited, an ALJ is permitted to consider a claimant's appearance and demeanor at a hearing. *Id.* (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985)); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded by* SSR 16-3p.

In accordance with Eleventh Circuit case law and SSR 96-7p, the ALJ properly considered Plaintiff's demeanor and disposition at the hearing.  The ALJ observed that Plaintiff "sat through the hearing without apparent distress and she responded well to all questions."  (Tr. at 24).  The ALJ then mentioned that Plaintiff "has performed a generally normal range of functional abilities, [including:  (1) periods of work activity; (2) managing her own medications; (3) not using an assistive device; (4) completing meal prep and grocery shopping; and (5) driving]."  (Tr. at 24).  Clearly, the ALJ's statement that Plaintiff sat through the hearing does not consist of improper "sit and squirm" jurisprudence.  *See Freeman*, 681 F.2d at 731.  The Court finds that the ALJ did not err in observing Plaintiff's demeanor at the hearing.

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements and, in turn, the ALJ's assessment of Plaintiff's RFC.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

Accordingly, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 15, 2021.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties